1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT FOR THE

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   ARMANDO SANDOVAL, etc.,        )        No. CV-F-06-066 REC/DLB
                                   )
10                                 )        ORDER GRANTING IN PART AND
                                   )        DENYING IN PART DEFENDANTS'
11               Plaintiff,        )        MOTION TO DISMISS (Doc. 8)
                                   )        AND DIRECTING PLAINTIFF TO
12          vs.                    )        FILE A FIRST AMENDED
                                   )        COMPLAINT WITHIN 30 DAYS OF
13                                 )        THE FILING DATE OF THIS
    MERCED UNION HIGH SCHOOL,      )        ORDER
14  et al.,                        )
                                   )
15                                 )
                                   )
16               Defendant.        )
                                   )
17  _____)

18        On April 24, 2006, the court heard defendants' motion to

19  dismiss.

20        Upon due consideration of the arguments of the parties and

21  the record herein, the court grants the motion to dismiss with

22  regard to the allegations in Paragraph 44(B) of the Complaint and

23  otherwise denies the motion to dismiss for the reasons set forth

24  herein.

25        On January 18, 2006, Armando Sandoval, a minor, by his

26  guardian, Jose Sandoval, filed a Complaint for Damages and

                                    1

Declaratory and Injunctive Relief.[1]  Named as defendants are the Merced Union High School District and various employees of the School District.   The Complaint alleges that

> While attending Atwater High School Plaintiff experienced pervasive, severe and unwelcome harassment based on his gender and sexual orientation.  Plaintiff's classmates harassed him physically and verbally on a near daily basis.  Plaintiff was continuously subjected to epithets such as 'faggot,' 'fag,' 'queer,' 'homo,' and 'cocksucker.'  Plaintiff's classmates threatened to assault, injure, and kill Plaintiff because of his gender and sexual orientation.  On several occasions Plaintiff was subjected to actual assault, battery, and physical violence on school grounds during and after school.  Defendants, who had the authority to institute corrective measures, were aware of the harassment, yet repeatedly and intentionally failed to take appropriate or necessary measures to stop the abuse suffered by Plaintiff.

The Complaint alleges that plaintiff "has filed an administrative claim for damages under the California Tort Claims Act with the MUHSD."  Paragraphs 13 through 45 allege the facts common to all causes of action.  The Eleventh Cause of Action is captioned "Cal.Education Code §§ 200, 201, 212.5, 220, 230, 230.5, 231.5 and 233.5 Sex Discrimination Against All Defendants."[2]

Defendants now move to dismiss portions of the Complaint for failure to state a claim upon which relief can be granted

---

[1]Plaintiff's pleadings and briefs in this action are in a very small font, making them difficult to read.  Unless there is a technical reason for the use of this font, plaintiff's counsel is requested to increase its size to save the court and staff from serious eyestrain.

[2]Although the Eleventh Cause of Action refers to Education Code § 230.5, there is no such provision in West's Annotated California Codes.

1   pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

2   Specifically, defendants move to dismiss the Eleventh Cause of

3   Action on the ground that the provisions of the California

4   Education Code upon which the cause of action is based do not

5   provide a private right of action.  In addition, defendants move

6   to dismiss the Seventh, Eighth, Ninth, Tenth and Eleventh Causes

7   of Action and/or specific factual allegations relevant to those

8   causes of action on the ground that plaintiff failed to comply

9   with the claim requirement of the California Government Tort

10  Claim Act.

11      **A.   <u>Eleventh Cause of Action - Private Right of Action</u>.**

12      As noted, the Eleventh Cause of Action alleges sex

13  discrimination in violation of California Education Code §§ 200,

14  201, 212.5, 220, 230, 231.5 and 233.5.[3]

15      In arguing that the above-cited provisions of the California

16  Education Code do not provide a private right of action,

17  defendants refer the court to <u>Nicole M. v. Martinez Unified</u>

18  <u>School District</u>, 964 F.Supp. 1369 (N.D.Cal. 1997).

19      In <u>Nicole M.</u>, Judge Patel addressed the defendants' motion

20  to dismiss the complaint pursuant to Rule 12(b)(6).  Plaintiff

21  had alleged that, beginning in 1991 and continuing through 1993

22  when she transferred to another school, male students repeatedly

23  sexually harassed her by unwanted verbal comments regarding

24  _____

25      [3]As noted above, although the Eleventh Cause of Action refers
    to Education Code § 230.5, there is no such provision in West's
26  Annotated California Codes.

1  plaintiff's breasts and figure, and on one occasion involved a

2  male student touching plaintiff's breast during class.   On

3  January 4, 1993, plaintiff's mother told the principal, Guzman,

4  that plaintiff was being sexually harassed at school and gave

5  Guzman the names of the boys who had harassed plaintiff and the

6  names of female students who had witnessed the harassment.

7  Sometime later, Guzman also learned that plaintiff had been

8  sexually assaulted in one of her classes.   Guzman suspended the

9  boy who had sexually assaulted plaintiff for one day.   Guzman

10 took other actions in response to the reported sexual harassment

11 that plaintiff alleged was inadequate and counter-productive.

12 Guzman spoke with the female students who had witnessed the

13 sexual harassment, promising to keep the meeting confidential.

14 However, Guzman broke that promise and others at the school,

15 including the harassers, discovered that plaintiff had reported

16 the harassment.   Guzman moved plaintiff into new classes so that

17 she could avoid the worst harassers.   However, when the worst

18 harasser was moved into one of plaintiff's new classes,

19 plaintiff's complaints were unavailing.   In early February 1993,

20 plaintiff's mother told Guzman and the superintendent of the

21 school district, Crocker, that at least one boy continued to

22 sexually harass plaintiff.   Because plaintiff no longer felt safe

23 at the school, she transferred to a school in another district in

24 mid-February 1993.   In resolving the motion to dismiss, Judge

25 Patel ruled in pertinent part:

26          Plaintiff's sixth claim charges MUSD and

4

Crocker with violating the prohibition
against sexual harassment in educational
institutions as provided by California
Education Code sections 200, 212.5, 212.6,
220 and 230.  Section 220 provides: 'No
person shall be subjected to discrimination
on the basis of sex in any program or
activity conducted by an educational
institution.' (West 1994) Section 230 defines
sex discrimination to include, *inter alia*,
harassment or other discrimination among
persons, including students, on the basis of
sex ... MUSD and Crocker argue that sections
220, 212.5, 212.6, 220 and 230 do not provide
a private right of action.

Neither of the parties nor the court has
found any authority explicitly confirming or
denying the existence of a private right of
action under the sections relied upon by
plaintiff.  It seems relatively well-
established under California law that '[t]o
imply a private right of action, the court
must determine that a private right of action
is *needed* to ensure the effectiveness of the
statute.'  *Arriaga v. Loma Linda Univ.*, 10
Cal.App. 4th 1556, 1564 ... (1992); *see also*
*Middlesex Ins. Co. v. Mann*, 124 Cal.App.3d
558, 570 ... (1981).  Here, plaintiff has a
private right of action under Title IX,
section 1983 and the Unruh Civil Rights Act.
As a result, a private right of action need
not be inferred under the California
Education Code sections cited by plaintiff.
Accordingly, defendants' motion to dismiss
plaintiff's sixth cause of action is granted.

964 F.Supp. at 1390.

Noting that the Complaint before the court alleges causes of

action under Title IX, 42 U.S.C. § 1983, and the Unruh Act,

defendants argue that the court should dismiss the Eleventh Cause

of Action.

The court notes <u>Nicole M.</u> was based on the 1994 version of

the Education Code.  The court further notes that the Education

5

1  Code was amended in 1998 by A.B. 499.  In relevant part, A.B. 499

2  amended Education Code § 200.  Prior to its amendment in 1998,

3  Section 200 provided:

4           It is the policy of the State of California
          to afford all persons, regardless of their
5           sex, equal rights and opportunities in the
          educational institutions of the state.  The
6           purpose of this chapter is to prohibit acts
          which are contrary to that policy and to
7           provide remedies therefor.

8  A.B. 499 amended Section 200 to provide:

9           It is the policy of the State of California
          to afford all persons in public schools,
10          regardless of their sex, ethnic group
          identification, race, national origin,
11          religion, or mental or physical disability,
          equal rights and opportunities in the
12          educational institutions of the state.  The
          purpose of this chapter is to prohibit acts
13          which are contrary to that policy and to
          provide remedies therefor.

14
Prior to the 1998 amendments, Education Code § 45 provided:
15
          (a) All pupils have the right to participate
16          fully in the educational process, free from
          discrimination and harassment.
17
          (b) California's public schools have an
18          affirmative obligation to combat racism,
          sexism, and other forms of bias, and a
19          responsibility to provide equal educational
          opportunity.
20
          (c) Harassment on school grounds directed at
21          an individual on the basis of personal
          characteristics or status creates a hostile
22          environment and jeopardizes equal educational
          opportunity as guaranteed by the California
23          Constitution and the United States
          Constitution.
24
          (d) There is an urgent need to prevent and
25          respond to acts of hate violence and bias-
          related incidents that are occurring at an
26          increasing rate in California's public

6

1          schools.

2              (e) There is an urgent need to teach and
           inform pupils in the public schools about
3          these rights, as guaranteed by the federal
           and state constitutions, in order to increase
4          pupils' awareness and understanding of their
           rights and the rights of others, with the
5          intention of promoting tolerance and
           sensitivity in public schools and in society
6          as a means of responding to potential
           harassment and hate violence.

7
               (f) It is the intent of the Legislature that
8          each public school undertake educational
           activities to counter discriminatory
9          incidents on school grounds and within
           constitutional bounds, to minimize and
10         eliminate a hostile environment on school
           grounds that impairs the access of pupils to
11         equal educational opportunity.

12    A.B. 499 renumbered Section 45 as Section 201 and amended Section

13    201 to include subparagraph (g):

14             It is the intent of the Legislature that this
           chapter shall be interpreted as consistent
15         with Article 9.5 (commencing with Section
           11135) of Chapter 1 of Part 1 of Division 3
16         of Title 2 of the Government Code, Title VI
           of the federal Civil Rights Act of 1964 (42
17         U.S.C. Sec. 1981, et seq.), Title IX of the
           Education Amendments of 1972 (20 U.S.C. Sec.
18         1681, et seq.), Section 504 of the federal
           Rehabilitation Act of 1973 (29 U.S.C. Section
19         794(a)), the federal Individuals with
           Disabilities Education Act (20 U.S.C. Sec.
20         1701, et seq.), the federal Equal Educational
           Opportunities Act (20 U.S.C. Sec. 1701 et
21         seq.), the Unruh Civil Rights Act (Secs. 51
           t0 53, incl., Civ. C.), and the Fair
22         Employment and Housing Act (Pt. 2.8
           (commencing with Sec. 12900), Div. 3, Gov.
23         C.), except where this chapter may grant more
           protections or impose additional obligations,
24         and that the remedies provided herein shall
           not be the exclusive remedies, but may be
25         combined with remedies that may be provided
           by the above statutes.

26

                                  7

The Legislative Counsel's Digest for A.B. 499 states in pertinent part: "This bill would specify that the provisions on discrimination may be enforced through a civil action."

Because Nicole M.'s holding was based on the version of the relevant Education Code provisions in effect in 1994 and because the subsequent amendments to the Education Code made by A.B. 499 and the legislative history of those amendments indicate that the Legislature intended that the provisions could be enforced through a civil action, the court concludes that defendants' reliance on Nicole M. is misplaced and that Nicole M. is no longer authoritative.  The court further concludes that the Legislature concluded that a private right of action was needed to implement the statutory scheme under the Middlesex test.  In order to imply a private right of action under Middlesex, a court must determine: (1) the plaintiff belongs to a class of persons the statute is intended to protect; (2) a private remedy will appropriately further the purpose of the litigation; and (3) such a remedy appears to be needed to assure the effectiveness of the statute.  See Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 174 (9th Cir. 1997), citing Middlesex Ins. Co. v. Mann, 124 Cal.App.3rd 558, 570 (1981).  Here, it cannot be doubted that plaintiff belongs to the class of persons the California Education Code provisions are intended to protect and that a private remedy will appropriately further the purpose of the litigation.  Given the statement in the Legislative Counsel's Digest and in Section 201(g), the court concludes that the

1   Legislature believed that such a remedy is needed to assure the

2   effectiveness of the statutory scheme.

3       Accordingly, defendants' motion to dismiss the Eleventh

4   Cause of Action is denied.

5       **B.   Compliance with California Government Tort Claims Act.**

6       Defendants contend that the factual allegations set forth in

7   paragraphs 14, 15, 16, 17, 18, 19, 20, 22, 23, 25, 26, 27, 28 29,

8   31, 33, 34, 36, 40 and 44(B) should be dismissed because these

9   allegations do not appear in plaintiff's claim under the

10  California Government Tort Claims Act.

11      In resolving this aspect of the motion to dismiss, the court

12  takes judicial notice of plaintiff's tort claim filed on November

13  22, 2005, wherein it is stated in pertinent part:

14          4.  The circumstances giving rise to this
            claim are as follows:

15
            Claimant Armando Sandoval is an openly gay
16          high school student at Atwater High School.
            From September 2004 to the present Claimant
17          Sandoval has been subjected to harassment by
            students in the form of derogatory epithets
18          such as 'fag' 'fagot' [sic] 'homo'
            'cocksucker' and 'queer.'  Although school
19          officials were aware of the harassment
            Claimant Sandoval was undergoing they took no
20          reasonable actions to stop the harassment.

21          Merced Unified School District's failure to
            discipline Claimant's Sandoval's harassers
22          led to one of them assaulting Claimant
            Sandoval with a knife outside the school
23          cafeteria on January 31, 2005.

24          Claimant Sandoval has also received notes
            threatening his life in his locker.  Once
25          again no reasonable action was taken to
            investigate the matter, discipline Claimant
26          Sandoval's harassers, or to assure Claimant

9

1          Sandoval's safety.

2          On or about September 13, 2005 a student
           harassed, spit, and attacked Claimant Armando
3          Sandoval at Atwater High School and when
           Armando defended himself, the Merced Unified
4          School District's employees responded by
           suspending Armando Sandoval from Atwater High
5          School.

6          Merced Unified School District's failure to
           discipline Claimant Sandoval's harassers has
7          led to them spitting on him and in multiple
           batterys against Claimant Sandoval's person.

8
           Merced Unified School District employees have
9          themselves harassed, discriminated and
           retaliated against Claimant Sandoval by
10         preventing him from attending classes in
           which he was enrolled, suspending Claimant
11         Sandoval without justification, taking
           disciplinary actions against Claimant
12         Sandoval which was [sic] unwarranted, failing
           to allow Claimant Sandoval the same
13         privileges as other students, unfairly
           seeking to have Claimant Sandoval evaluated
14         as being somehow 'learning impaired,' falsely
           and fraudulently stating that Claimant
15         Armando Sandoval's parents had consented to
           place Armando Sandoval in independent study,
16         intimidating Claimant Sandoval, and other
           actions.

17
           Despite the fact that Merced Unified School
18         District's own internal investigation found
           that Claimant's prior complaint to Merced
19         Unified School District was substantially
           justified it failed to take any remedial
20         actions specified in its own report.

21   This tort claim names the employees who caused these injuries to

22   plaintiff as Kelly J. Bentz, Sylvia Smith, Kuljit Malhi, Linda

23   Lucas, Paul Shirlock, Ralph Calderon, Robert Fore, Scott Clinton,

24   Brian Ballenger, Jordan Bell, Andy Miller, Kenneth Rhoades,

25   Jeffrey Blackwell, all school board members, and possibly others

26   to be identified.  Plaintiff's tort claim filed on November 22,

10

2005 was denied.  Thereafter, the School District granted

plaintiff's request to file a late claim.  Plaintiff filed the

second tort claim on December 27, 2005.  Paragraph 4 of that

tort claim and the names of the public employees are identical in

all respects to the one filed on November 22, 2005, except that

this later tort claim describes events from September 2004 "to

the present", i.e., until December 27, 2005.  This second tort

claim also was denied.

The allegations in the Complaint that defendants move to

dismiss as not being included in the tort claims are as follows:

> 14.  In September 2004 Vice Principal Malhi
> and campus liaison Steven Menezes searched
> Plaintiff's backpack.

> 15.  On or about November 2, 2004 Plaintiff
> was sent to the 'responsibility center' for
> allegedly disrupting class.  In fact,
> Plaintiff had not been disrupting class but
> had been sent to the center due to his sexual
> orientation.

> 16.  On or about November 4, 2004 Plaintiff
> was told by a MUHSD counselor that, 'One more
> screw-up and you're in IHS.'  IHS is an
> independent study program and would result in
> Plaintiff not attending Atwater High School.

> 17.  Early in the Spring Semester of 2005
> Atwater High School male students in
> Plaintiff's drama class told Plaintiff that,
> 'being gay is sick.'  After Plaintiff
> complained of this conduct Defendant failed
> to investigate it.

> 18.  In the Spring Semester of 2005 Plaintiff
> was unable to use the regular restroom
> because other students would harass Plaintiff
> based on his sexual orientation.  MUHSD was
> aware of this problem and took no reasonable
> steps to correct it.

11

19.   In the Spring Semester of 2005 Mr.
Rhoades, Plaintiff's third period teacher,
repeatedly ignored Plaintiff and made him
raise his hand to speak in class while he
allowed other students to speak without
raising their hands.  A fellow student
informed Plaintiff that Mr. Rhoades had
stated, 'I don't like gay people.'

20.   In the Spring Semester of 2005 Plaintiff
was repeatedly harassed by students as he
passed by the classroom of Mr. Schiber.
Plaintiff reported this harassment to
Defendant Bentz.  Despite having informed
Defendant Bentz and Mr. Schiber's presence
during the incidents themselves Defendants
permitted the harassment to continue and took
no reasonable steps to prevent its re-
occurrence.

...

22.   On or about January 28, 2005 a student
called Plaintiff a 'stupid bitch' and pushed
him into the mud due to Plaintiff's sexual
orientation.  On or about January 31, 2005
the student menaced Plaintiff with a knife
and threatened to kill him in front of
numerous witnesses.  Nevertheless it took
several hours before the student was relieved
of the knife or anyone at MUHSD called the
police.  Furthermore, MUHSD illegally placed
the Plaintiff on 'administrative leave' for a
week as a result of the incident.

23.   In or about February 2005 a student
called Plaintiff a 'faggot' in the classroom
of Defendant Miller.  Plaintiff replied,
'there is no homophobia allowed.'  Defendant
Miller said, 'yeah, there is, it's a fear
just like a fear of spiders.'  Defendant
Miller took no action regarding the student
referring to the Plaintiff as a 'faggot.'
Throughout the Spring 2005 semester Defendant
Miller was aware that Plaintiff was
undergoing harassment in his classroom yet
took no steps to prevent its occurrence.

...

25.   On or about February 18, 2005 a student

12

falsely accused Plaintiff of harassing him,
called Plaintiff a 'fucking faggot' and
grabbed Plaintiff's hand while saying, 'Hey,
sexy.'  Plaintiff reported the incident and
Defendant failed to take adequate measures to
ensure that the derogatory name called
ceased.  The name calling continued.

26.  On or about February 23, 2005 a student
harassed Plaintiff by throwing an object at
his head and calling him a, 'faggot.'
Despite Plaintiff reporting this incident on
three occasions the harassment continued.

27.  On or about February 25, 2005 Plaintiff
reported a student for harassing and calling
him names such as 'queer' and saying phrases
such as, 'Oh, you're too close' and jumping
away from Plaintiff.  Defendant failed to
take adequate measures to stop the
harassment.

28.  In or about February or March 2005
Plaintiff was taking [sic] to a student in
class about being gay and the teacher,
Defendant Miller, said, 'Oh stop it, you're
turning me on.'

29.  On or about March 2, 2005, Defendant
Miller told Vice Principal Bentz that Armando
thought she was 'hot.'  Plaintiff had never
said anything of the sort.  Defendant
Miller's actions resulted in Plaintiff being
reprimanded by Defendant Bentz.

...

31.  On or about March 24, 2005 a female
student told Plaintiff that she would get a
fellow male student's telephone number for
him.  Plaintiff told her not to do so.  The
female student asked the male student for his
number for Plaintiff despite his express
statement not to.  The male student then
reported the incident and Plaintiff was
counseled despite there being no evidence
whatsoever that he had made any comment
concerning the student or sought out the
telephone number.  Furthermore, Plaintiff is
informed and believes that heterosexual
students who seek to obtain the telephone

numbers of fellow students are not counseled for such conduct.

...

33.  On or around April 5, 2005 MUHSD allowed it to become generally known that Plaintiff was represented by counsel and was considering a lawsuit against MUHSD.

34.  On or about April 11, 2005 a magazine page depicting a nude man in a bathtub was placed on Plaintiff's desk with a card stating, 'You know you want his body.' Plaintiff reported the incident to Defendant Bentz.  Defendants failed to take adequate steps to stop the harassment.

...

36.  In or about April 2005 Plaintiff was interested in trying out from the pep/cheerleading squad.  Plaintiff was informed by several members of the football team that they would quit the team if he did so.  The coach of the team was aware of this and similar incidents.  Nevertheless no action was taken by MUHSD.

...

40.  On or about May 26, 2005 Plaintiff arrived to take his final examination in his earth science class.  Upon his arrival Plaintiff told his teacher that he wished to take the final examination.  Plaintiff was asked by the teacher, in a voice audible to the entire class, why Plaintiff wanted to take the final examination as it 'would not help your grades at all' humiliating Plaintiff in front of the class.

...

44[¶] B.  After meeting with Defendants and Defendants' representatives on December 12, 2005, Plaintiff agreed to return to Atwater High School on January 3, 2006.  Plaintiff returned to school on January 3, 2006.  On January 10 and 12, 2006, plaintiff was harassed, called names and threatened by

14

other students.  Defendants failed and
refused to take any actions to prevent the
harassment and threats against Plaintiff.  On
January 17, 2006, Plaintiff was threatened by
a student who told Plaintiff that he was
going to kill him after school.  Plaintiff
left school prior to the completion of
classes on January 17, 2006.  Plaintiff now
fears for his safety to the extent that
afraid to attend Defendants' school ....

Defendants argue that because the above-quoted factual

allegations were not included in plaintiff's tort claims, the

court must dismiss these specific allegations.

In <u>Fall River Joint Unified School District v. Superior

Court</u>, 206 Cal.App.3d 431 (1988), the tort claim alleged that the

student was injured when one of the school doors closed with

sufficient force slam the student's head against the steel door

frame.  In his complaint, the plaintiff included an allegation

and cause of action that the school had negligently failed to

supervise students engaged in horseplay.  The Court of Appeal

held in pertinent part:

Government Code § 945.4 requires, as a
prerequisite to maintenance of an action
against a public entity for damages arising
out of an alleged tort, the timely filing of
a claim, and its rejection.  Section 910
provides that the claim must include a
general description of the injuries and the
names of the public employees who caused
them.  Furthermore, 'If a plaintiff relies on
more than one theory of recovery against the
[governmental] agency, each cause of action
must have been reflected in a timely claim.
In addition, the factual circumstances set
forth in the written claim must correspond
with the facts alleged in the complaint; even
if the claim were timely, the complaint is
vulnerable to a demurrer [or motion for
judgment on the pleadings] if it alleges a

15

factual basis for recovery which is not
fairly reflected in the written claim.' ....

206 Cal.App. 3d at 434.

However, the California Supreme Court addressed this issue
in <u>Stockett v. Association of California Water Agencies Joint
Powers Insurance Authority</u>, 34 Cal.4th 441 (2004), Stockett
presented a tort claim that he was wrongfully terminated for
supporting a female employee's sexual harassment complaints
against a broker, Malone, which harassment was in violation of
the Fair Employment and Housing Act and the public policy of
California; that Stockett became aware that members of the
Executive Committee and Malone had purchased insurance without
determining that the insurer provided the lowest price or value
to its members, and refused to select a provider through a
competitive bidding process; and that Malone and some members of
the Executive Committee, learning that Stockett was considering
soliciting other bids, conspired to induce the Executive
Committee to terminate Stockett by meeting secretly and making
false charges against him.  After JPIA denied Stockett's claim,
he filed a lawsuit against JPIA.  He later moved to amend his
complaint to allege that he had been wrongfully terminated in
violation of public policy on three grounds: (1) opposing sexual
harassment by Malone in the workplace; (2) objecting to a
conflict of interest involving Malone's dual role as both JPIA's
insurance consultant and a vendor of insurance products to JPIA;
and (3) exercising his First Amendment right of free speech by

16

1    objecting to JPIA's practice of not having its insurance

2    purchased on the open market through an open bid process, which

3    was in the best interests of JPIA's member agencies.   JPIA

4    unsuccessfully opposed the motion to amend, claiming that the

5    facts in the amended complaint had not been set forth in the

6    government tort claim.   At trial, Stockett also argued that he

7    had been terminated for exercising his free speech rights when he

8    made statements to Smart's California Workers' Compensation

9    Bulletin, an insurance industry newsletter, to the effect that

10   JPIA's workers' compensation insurer was selling insurance below

11   cost.   After a plaintiff's verdict, JPIA appealed.   The Court of

12   Appeals reversed the judgment, holding that "[b]y allowing the

13   conflict of interest and free speech theories to be presented to

14   the jury, the trial court allowed the Stocketts to present a very

15   different case than one based solely on retaliation for objection

16   to sexual harassment."   The California Supreme Court reversed the

17   Court of Appeals.   In so doing, the Supreme Court explained:

18           The purpose of these statutes is 'to provide
             the public entity sufficient information to
19           enable it to adequately investigate claims
             and to settle them, if appropriate, without
20           the expense of litigation.' ... Consequently,
             a claim need not contain the detail and
21           specificity required of a pleading, but need
             only 'fairly describe what [the] entity is
22           alleged to have done.' ... As the purpose of
             the claim is to give the government entity
23           notice sufficient for it to investigate and
             evaluate the claim, not to eliminate
24           meritorious actions ..., the claims statute
             'should not be applied to snare the unwary
25           where its purpose has been satisfied.

26           ...

17

1
2
3
4
5
6
7
8
9
10

    The claim, however, need not specify each
particular act or omission later proven to
have caused the injury ... A complaint's
fuller exposition of the factual basis beyond
that given in the claim is not fatal, so long
as the complaint is not based on an 'entirely
different set of facts.' ... Only where there
has been a 'complete shift in allegations,
usually involving an effort to premise civil
liability on acts or omissions committed at
different times or by different persons than
those described in the claim,' have courts
generally found the complaint barred ...
Where the complaint merely elaborates or adds
further detail to a claim, but is predicated
on the same fundamental actions or failures
to act by the defendants, courts have
generally found the claim fairly reflects the
facts pled in the complaint.

11   34 Cal.4th at 446-447.  In holding that Stockett's tort claim

12   complied with the requirements of California law, the Supreme

13   Court noted that the claim generally stated the circumstances of

14   his termination and that the termination had been wrongful

15   because it was effected in violation of California public policy.

16   The Supreme Court further held that "[w]hile Stockett's claim did

17   not specifically assert his termination violated the public

18   policies favoring free speech and opposition to public employee

19   conflict of interest, these theories to do not represent

20   additional causes of action and hence need not be separately

21   presented under [California Government Code] section 945.4."  Id.

22   at 447.  The Supreme Court distinguished Fall River because

23
24
25
26

    the additional theories in Stockett's amended
complaint did not shift liability to other
parties or premise liability on acts
committed at different times or places.  In
Fall River, the plaintiff was injured at
school when a steel door struck his head.
His notice of claim stated the injury was

18

1     caused by the school's negligent maintenance
    of the door, but his complaint additionally
2     alleged the school had negligently failed to
    supervise students engaged in horseplay ...
3     The court held that the factual divergence
    between claim and complaint was too great;
4     the complaint alleged liability 'on an
    entirely different factual basis than what
5     was set forth in the tort claim.' ...
    Stockett's complaint, in contrast, alleged
6     liability on the same wrongful act, his
    termination, as was stated in his notice of
7     claim.

8 _Id_. at 448.  The California Supreme Court in Stockett further

9 held:

10     Nor were the fundamental facts underlying
    Stockett's claim changed in his amended
11     complaint.  Rather, the free speech and
    conflict of interest theories simply
12     elaborated and added detail to his wrongful
    termination claim by alleging additional
13     motivations and reasons for JPIA's single
    action of wrongful termination.  This case is
14     thus similar to previous cases holding that
    the claim fairly reflected the theories of
15     liability set forth in the complaint.  In
    _Blair v. Superior Court_, _supra_, ... for
16     example, the plaintiff, a passenger, was
    injured when the driver lost control of his
17     vehicle on a highway and collided with a
    tree.  His claim stated the state had
18     negligently constructed and maintained the
    highway surface, particularly by failing to
19     sand it to prevent icing, whereas the
    complaint alleged the state had failed to
20     provide warning signs and a guardrail on the
    highway ... The appellate court stated the
21     general claim of 'negligent construction'
    could 'reasonably be read to encompass
22     defects in the placement of highway
    guardrails ... or inadequate warning signs,'
23     and the plaintiff was not obliged to specify
    in his notice of claim his particular
24     theories of negligence ... The claim and
    complaint were based on the same foundation:
25     'because of its negligent construction or
    maintenance, the highway at the scene of the
26     accident constituted a dangerous condition of

19

public property.' ... Stockett's claim and
complaint, similarly, are based on the same
factual foundation, viz., that certain named
JPIA agents wrongfully terminated him.

In comparing claim and complaint, 'we are
mindful that "[s]o long as the policies of
the claims statutes are effectuated, [the
statutes] should be given a liberal
construction to permit full adjudication on
the merits."' ... If the claim gives adequate
information for the public entity to
investigate, additional detail and
elaboration in the complaint is permitted.

By notifying JPIA of its act (wrongful
termination) that caused his injury (loss of
earnings, mental and physical pain and
suffering) and naming those JPIA agents he
believed responsible, Stockett's claim
provided sufficient information for JPIA to
investigate and evaluate its merits.
Contrary to JPIA's suggestion, a reasonable
investigation of a wrongful termination claim
would not be limited to the motives for
termination hypothesized in the fired
employee's claim form; certainly it would not
be so limited where, as here, the employee at
the time of termination asked for the reasons
and was refused them.  A reasonable
investigation by JPIA would have included
questioning members of the committee to
discover their reasons for terminating
Stockett and an evaluation of whether any of
the reasons proffered by the committee,
including but not limited to the theories in
Stockett's claim, constituted wrongful
termination.  (Cf. *Sandhu v. Lockheed
Missiles and Space Co.* (1994) 26 Cal.App.4th
846, 859 ... [where administrative charge
claimed only racial discrimination, complaint
was not defective in alleging national origin
discrimination as well; 'we are confident
that the administrative investigation into
Sandhu's claim of disparate treatment because
he was "Asian" would likely have encompassed
both race and national origin']; *Baker v.
Children's Hospital Medical Center* (1989) 209
Cal.App.3d 1057, 1065 ... [investigation of
administratively charged instances of
discrimination 'would lead to the

20

1
2
3

> investigation of subsequent discriminatory
> acts undertaken by respondents in retaliation
> for appellant's filing an internal
> grievance'].)

4
5
6
7
8
9
10
11

> In summary, Stockett adequately presented to
> JPIA his wrongful termination cause of
> action.  His notice of claim satisfied the
> purposes of the claims statutes by providing
> sufficient information for the public entity
> to conduct an investigation into the merits
> of the wrongful termination claim, and the
> complaint's free speech and conflict of
> interest theories of termination in violation
> of public policy were fairly reflected in the
> claim because the complaint did not change
> the fundamental facts of the claim.  Stockett
> was therefore not precluded from amending his
> complaint to include these theories or from
> presenting them to the jury.

12

Id. 448-450.

13
14
15
16
17
18
19
20

Defendants argue that "the factual circumstances stated in the written claim as the basis of the public entity's liability must correspond with the facts alleged in the complaint."  In so arguing, defendants refer the court to Loehr v. Ventura County Community College Dist., 147 Cal.App.3d 1071, 1082-1083 (1993): "Although a claim need not conform to pleading standards, the facts constituting the causes of action must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury."

21
22
23
24
25

In opposition, plaintiff contends that the Complaint "is based on the same legal and factual theories set forth in his California Tort Claim and fully satisfy the requirements of the Act as set forth in *Stockett ....*"  Plaintiff argues:

26

> [T]he general allegations of Plaintiff's tort
> claim do fairly encompass the more detailed

1 pleadings of his lawsuit.  For example, in
 his claim Plaintiff asserted, 'Merced Unified
2 School District's employees have themselves
 harassed, discriminated and retaliated
3 against Claimant Sandoval by preventing him
 from attending classes in which he was
4 enrolled, suspending Claimant Sandoval
 without justification, taking disciplinary
5 actions against Claimant Sandoval which was
 [sic] unwarranted, failing to allow Claimant
6 Sandoval the same privileges as other
 students, unfairly seeking to have Claimant
7 Sandoval evaluated as being somehow 'learning
 impaired,' falsely and fraudulently stating
8 that Claimant Armando Sandoval's parents had
 consented to place Armando Sandoval in
9 independent study, intimidating Claimant
 Sandoval, and other actions.' ... Numerous
10 items objected to by the Defendants are
 merely examples of how, 'District's employees
11 have themselves harassed, discriminated and
 retaliated against Claimant' as asserted in
12 Plaintiff's claim, 'taking disciplinary
 actions against Claimant Sandoval which was
13 [sic] unwarranted' and 'suspending Claimant
 Sandoval without justification.'  In his
14 complaint at paragraph 15 where plaintiff
 pleads that, 'On or about November 2, 2004
15 Plaintiff was sent to the "responsibility
 center" for allegedly disrupting class.  In
16 fact, Plaintiff had not been disrupting class
 but had been sent to the center because of
17 his sexual orientation' and paragraph 22 in
 which Plaintiff pleads that,' Marin [sic]
18 Unified High School District illegally placed
 the Plaintiff on "administrative leave" for a
19 week as a result of the incident.'

20 Therefore, plaintiff argues, each of the allegations contained in

21 the Complaint are fairly related to those alleged in the claim

22 under the California Tort Claims Act.

23  Defendants argue that the fact that these allegations were

24 not described in the tort claims, coupled with the severity of

25 the allegations, means that defendants were not given adequate

26 notice to analyze these allegations, thereby running afoul of the

1  Act's notice provisions and the statute's core purpose.

2  Furthermore, defendants argue, plaintiff's contention that the

3  contested allegations fairly relate to those events described in

4  the tort claims is without merit:

5          Plaintiff bases Defendants' civil liability
           on these *specific* allegations.  In short,
6          Plaintiff asserts each allegation as a
           distinct violation upon which Plaintiff's
7          claims rest, and Plaintiff's allegations
           which occur after the filing of both of his
8          government tort claims are no exception.
           Consequently, if this Court were to allow
9          entirely new factual allegations, only found
           in the civil complaint, to carry the same
10         possible liability as the factual allegations
           properly asserted, Defendants would
11         necessarily need to analyze and defend
           against specific allegations to which they
12         have no previous knowledge, which
           specifically violates the CGTCA.
13
   Finally, defendants refer to Stockett's point in distinguishing
14
   Fall River that "the additional theories in Stockett's amended
15
   complaint did not shift liabilities to other parties or premise
16
   liability on acts committed at different times or places."  34
17
   Cal.4th at 448.
18
        The court concludes that, unless the substantial compliance
19
   doctrine applies, see discussion infra, the allegations at issue
20
   must be dismissed for failure of the plaintiff to file a tort
21
   claim with regard to those allegations for the reasons argued by
22
   defendants.
23
        With regard to the allegations at issue, including those set
24
   forth in Paragraph 44(B), plaintiff argues that he is entitled to
25
   proceed in this action with regard to those allegations under the
26

                                    23

1  Substantial Compliance Doctrine.

2       In <u>City of San Jose v. Superior Court</u>, 12 Cal.3d 447, 455

3  (1974), the California Supreme Court explained:

> 4       It is not the purpose of the claims statutes
>          to prevent surprise.  Rather, the purpose of
> 5       these statutes is to provide the public
>          entity sufficient information to enable it to
> 6       adequately investigate claims and settle
>          then, if appropriate, without the expense of
> 7       litigation ... It is well-settled that claims
>          statutes must be satisfied even in the face
> 8       of the public entity's actual knowledge of
>          the circumstances surrounding the claim.
> 9       Such knowledge - standing alone - constitutes
>          neither substantial compliance nor basis for
> 10      estoppel. ...

11 The Supreme Court further held that in determining a contention

12 that there has been substantial compliance with the claim filing

13 requirements of the California Government Tort Claims Act, "<u>two</u>

14 tests shall be applied: Is there <u>some</u> compliance with <u>all</u> of the

15 statutory requirements; and, if so, is this compliance sufficient

16 to constitute <u>substantial</u> compliance." <u>Id</u>. at 456-457.   In

17 <u>Phillips v. Desert Hospital Dist.</u>, <u>supra</u>, 49 Cal.3d at 709, the

18 California Supreme Court held that "a document constitutes a

19 'claim as presented' triggering sections 910.8 [and] 911 ..., if

20 it discloses the existence of a 'claim' which, if not

21 satisfactorily resolved, will result in a lawsuit against the

22 entity."  "[T]o be sufficient to constitute a trigger-claim under

23 section 910.8, the content of the correspondence to the recipient

24 entity must at least be of such nature as to make it readily

25 discernible by the entity that the intended purpose thereof is to

26 convey the assertion of a compensable claim against the entity

which, if not otherwise satisfied, will result in litigation."
Green v. State Center Community College Dist., 34 Cal.App.4th
1348, 1358 (1995).  "The doctrine of substantial compliance,
however, cannot cure total omission of an essential element from
the claim or remedy a plaintiff's failure to comply meaningfully
with the statute."  Loehr v. Ventura County Community College
Dist., supra, 147 Cal.App.3d at 1083.

Plaintiff argues that his tort claims presented sufficient
information to appraise the defendants of the nature of the
claims at issue, i.e., that the District's employees had
discriminated against the plaintiff and failed to take reasonable
steps to stop the harassment and discrimination against the
plaintiff because of his sexual orientation.  Plaintiff asserts:
"It is this information which forms the basis of Plaintiff's
claims and would have allowed ... [the] District to conduct an
appropriate investigation."

With regard to the allegations in the Complaint that were
not included in the tort claims of events that occurred prior to
December 27, 2005, the court concludes that plaintiff has
established substantial compliance with the claim requirement.[4]

---

[4]Plaintiff contends that defendants were aware in detail of
many of plaintiff's factual allegations, including those not set
forth in the tort claims.  In so asserting, plaintiff refers to the
Declaration of Daniel Bacon, plaintiff's attorney, where Mr. Bacon
avers that he attended lengthy meetings with defendants'
representatives and attorneys in which plaintiff's allegations were
discussed in detail, and avers that plaintiff filed an
administrative complaint with the District pursuant to 5 California
Administrative Code, §§ 4600-4671.  This complaint resulted in the
District's investigation of plaintiff's allegations and

1    However, with regard to the allegations in paragraph 44(B),

2    the court concurs with defendants that plaintiff did not

3    substantially comply with the claim requirement with respect to

4    these alleged instances.  With regard to these allegations,

5    plaintiff does not merely elaborate or add further detail to his

6    claim, but alleges two entirely distinct factual occurrences

7    which transpired after the filing of the two tort claims.   As

8    explained in <u>Fall River</u>, <u>supra</u>, 206 Cal.App.3d at 435-436:

9              [The substantial compliance doctrine] is
             unavailing where the plaintiff seeks to
10             impose upon the defendant ... the obligation
             to defend a lawsuit based upon a set of facts
11             entirely different from those first noticed.
             Such an obvious subversion of the purposes of
12             the claims act, which is intended to give the
             governmental agency an opportunity to
13             investigate and evaluate its potential
             liability, is unsupportable ... Here,

14

15   recommendations with regard to those which the District's
     investigation found had merit, the School District sending a letter
16   to plaintiff's counsel on May 24, 2005 stating that "[e]nough of
     the allegations have been sustained, in whole or in part, that I am
17   recommending that all staff and students undergo sexual harassment
     training before the end of the calendar year."  In a report dated
18   June 24, 2005, sent to plaintiff's counsel,  the School District
     stated: "In order to prevent future issues from arising involving
19   Armando and others, the District will provide its staff and student
     body at Atwater High School with additional, specific training on
20   avoiding and preventing illegal harassment, including harassment
     based on actual or perceived sexual orientation no later than
21   January 1, 2006."  Therefore, plaintiff argues, the function of the
     Tort Claims Act has been fulfilled.  However, as noted above,
22   actual knowledge of the circumstances of the claim does not
     constitute substantial compliance with the claim requirement.
23   Therefore, to the extent that plaintiff relies on defendant's
     actual knowledge of all of the allegations of the Complaint except
24   those occurring in January 2006 because of the investigation of
     plaintiff's administrative complaint as constituting substantial
25   compliance with the claim requirement, plaintiff's contention is
     without merit.
26

                                   26

> defendant was given no warning that it might
> be sued for its employee's failure to
> supervise plaintiff and his fellow students,
> and had no opportunity to consider the
> validity of such a claim until the filing of
> the amended complaint.

As noted, the second tort claim detailed events from September

2004 "to the present", i.e., until December 27, 2005.  Defendants

would have had no notice and no reason to investigate acts

occurring after that date in order to assess their potential

liability for those acts.

Plaintiff further argues that defendants have waived any

defense related to the insufficiency of plaintiff's tort claims

by failing to comply with the legal requirement that defendants

notify a claimant of any defect or omission in the claim.

In so arguing, plaintiff relies on California Government

Code § 910.8, which provides in pertinent part:

> If, in the opinion of the board or the
> persons designated by it, a claim as
> presented fails to comply substantially with
> the requirements of sections 910 and 910.2,
> or with the requirements of a form provided
> under Section 910.4 if a claim is presented
> pursuant thereto, the board or the person
> may, at any time within 20 days after the
> claim is presented, give written notice of
> its insufficiency, stating with particularity
> the defects or omissions therein.  The notice
> shall be given as prescribed by Section
> 915.4.  The board may not take action on the
> claim for a period of 15 days after the
> notice is given.

California Government Code § 911 further provides:

> Any defense as to the sufficiency of the
> claim based upon a defect or omission in the
> claim as presented is waived by the failure
> to give notice of the insufficiency with

27

1
2
3
4

respect to the defect or omissions as
provided in Section 910.8, except that no
notice need be given and no waiver shall
result when the claim as presented fails to
state either an address to which the person
presenting the claim desires notices to be
sent or an address of the claimant.

5   Plaintiff's claim of waiver is without merit.  Plaintiff's

6 assertion requires that defendants be mind-readers and anticipate

7 that the facts alleged in the Complaint would include factual

8 allegations note detailed in the tort claims and notify plaintiff

9 that the tort claims were insufficient on that basis.

10   Defendants argue that, because plaintiff failed to present a

11 tort claim with regard to these allegations, the court should

12 dismiss these allegations from the Complaint.

13   Plaintiff argues that, because the tort claims alleged a

14 pattern of harassment and discrimination extending "'[f]rom

15 September 2004 to the present', it is clear from the nature of

16 the claim that the issues addressed in the document are ongoing

17 and have not ended."  Plaintiff further notes that a plaintiff is

18 required by California Government Code § 911.2(a) to file a tort

19 claim not later than six months from the date his cause of action

20 accrues.  Plaintiff contends:

21
22
23
24
25
26

Based on the facts of this case it is clear
that Plaintiff's causes of action as pled in
the complaint had already accrued prior to
December 27, 2005.  Additional facts which
support plaintiff's causes of action or which
caused additional injury to Plaintiff under
the same course of conduct as complained on
in the Plaintiff's original claims do not
change the date at which his cause of action
accrued.  Thus, Plaintiff believes that any
argument that Plaintiff needs to re-file his

28

claims to reflect additional facts would be
contrary to the statutory scheme.

The court does not agree.  Plaintiff is seeking to impose tort liability on defendants based on alleged tortious acts that were not included in the tort claim and which occurred after the tort claim was filed.  Given the statutory scheme and the purpose of the tort claim, plaintiff should have filed a tort claim with regard to the acts described in paragraph 44(B).  Because he did not, the allegations in paragraph 44(B) are dismissed.

ACCORDINGLY:

1.  Defendants' motion to dismiss is granted in part and denied in part as set forth herein.

2.  Plaintiff shall file a First Amended Complaint in accordance with this Order within 30 days of the filing date of the Order.

IT IS SO ORDERED.

**Dated:  May 1, 2006**                           **/s/ Robert E. Coyle**
668554                              UNITED STATES DISTRICT JUDGE

29